1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| ANGELO AMATO, | CASE NO. 3:14-cv-0588-GPC-BLM |
| Plaintiff, | **ORDER:** |
| | **(1) GRANTING IN PART AND DENYING IN PART DEFENDANT NARCONON FRESH START D/B/A SUNSHINE SUMMIT LODGE'S MOTION TO DISMISS;** |
| v. | **[ECF No. 12]** |
| NARCONON FRESH START d/b/a Sunshine Summit Lodge et al., | **(2) GRANTING DEFENDANTS' NARCONON INTERNATIONAL AND ASSOCIATION FOR BETTER LIVING AND EDUCATION INTERNATIONAL MOTION TO DISMISS** |
| Defendants. | **[ECF No. 13]** |

11
12
13
14
15
16
17
18
19
20
21

## I. INTRODUCTION

22

Before the Court are defendant Narconon Fresh Start d/b/a Sunshine Summit Lodge's ("Fresh Start") Motion to Dismiss, (ECF No. 12), and defendants Narconon International ("NI") and Association for Better Living and Education International's ("ABLE") Motion to Dismiss, (ECF No. 13). Plaintiff Angelo Amato ("Plaintiff") opposed both motions to dismiss. (ECF Nos. 20, 21.) Fresh Start, NI, and ABLE (collectively, "Defendants") responded to Plaintiff's opposition. (ECF Nos. 23, 24.)

The parties have fully briefed the motion. (ECF Nos. 12, 13, 20, 21, 23, 24.) The

23
24
25
26
27
28

Court finds the motion suitable for disposition without oral argument pursuant to Civil Local Rule 7.1(d)(1). Upon review of the moving papers, admissible evidence, and applicable law, the Court **GRANTS IN PART AND DENIES IN PART** Fresh Start's motion to dismiss and **GRANTS** NI and ABLE's motion to dismiss.

## II. PROCEDURAL HISTORY

On March 13, 2014, Plaintiff filed a complaint alleging three causes of action. (ECF No. 1.) On June 9, 2014, Plaintiff filed a Fourth Amended Complaint ("FAC") alleging nine causes of action against Fresh Start, NI, and ABLE. (ECF No. 10.) On August 11, 2014, this case was assigned to the Honorable Gonzalo P. Curiel. (ECF No. 16.)

On July 31, 2014, Fresh Start filed a motion to dismiss Plaintiff's complaint. (ECF No. 12.) On August 6, 2014, NI and ABLE filed a motion to dismiss Plaintiff's complaint. (ECF No. 13.) On August 6, 2014, NI and ABLE filed a request for judicial notice. (ECF No. 14.) On August 29, 2014, Plaintiff filed oppositions to Fresh Start and NI and ABLE's motions. (ECF Nos. 20, 21.) On August 29, Plaintiff filed a request for judicial notice. (ECF No. 22.) On September 12, 2014, Fresh Start and NI and ABLE filed responses to Plaintiff's oppositions. (ECF No. 23, 24.)

## III. FACTUAL BACKGROUND

Plaintiff alleges that he is a mixed martial arts fighter who became addicted to Vicodin prior to December 19, 2013. (FAC ¶ 15.) On approximately December 19, 2013, Plaintiff alleges that he spoke to Fresh Start employee Dan Carmichael ("Carmichael"). (Id. ¶ 13–14.) Plaintiff alleges that Carmichael told Plaintiff that Fresh Start's Narconon "Treatment" Program (the "Narconon Program") is effective because its "New Life Detoxification Program" (the "NLD Program") makes patients sweat out "residual drug toxins" that cause drug cravings. (Id. ¶ 15.) Plaintiff alleges that Carmichael told Plaintiff that: (1) the NLD Program had been scientifically and medically proven effective; (2) if Plaintiff underwent the Narconon Program, he would be under the care of a nurse or doctor at all times; (3) if Plaintiff underwent the

Narconon Program, Fresh Start would provide Plaintiff with "extensive" drug and addiction counseling; (4) Fresh Start staff are properly trained to care for and treat addicts; and (5) Plaintiff's insurance would reimburse 50% of the cost of the Narconon Program. (Id. ¶ 16–17.) Plaintiff alleges that Carmichael directed Plaintiff to Fresh Start's website for its Warner Springs, California facility, (http://www.sunshinesummitlodge.com), which represented that the Narconon Program had a 76% success rate. (Id. ¶ 18.)

Plaintiff alleges that, based on these representations, he signed a contract to enter the Narconon Program at the Warner Springs facility. (Id. ¶ 19.) Plaintiff alleges that the contract stated that the "Narconon Program" was founded by William Benitez, after Benitez was inspired by the philosophy contained in L. Ron Hubbard's book "The Fundamentals of Thought," and that the "Narconon Program" is "secular (NON-RELIGIOUS) . . . and . . . does not include participation in any religious studies of any kind." (Id. ¶ 19.) Plaintiff alleges that the full title of L. Ron Hubbard's book is Scientology: The Fundamentals of Thought. (Id. ¶ 20.)

Plaintiff alleges that Carmichael stated that the Narconon Program's fee was $31,000.00 and that it needed to be paid in full prior to starting the program. (Id. ¶ 21.) Plaintiff alleges that Carmichael told Plaintiff that Plaintiff needed to enter the program quickly because "if [Plaintiff] did not get help immediately, [Plaintiff] would end up dead" and there were only two spots left in the program. (Id. ¶ 22.) Plaintiff alleges that he was told over the phone that he would have his own room during the Narconon Program. (Id. ¶ 24.)

Plaintiff alleges that there were "numerous empty beds" when he started the Narconon Program. (Id. ¶ 22.) Plaintiff alleges that he started detox after entering the Warner Springs facility and was only supervised by a 19-year-old who did not have medical training and slept during the majority of Plaintiff's detox. (Id. ¶ 23.) Plaintiff alleges that after he finished detox, he began the Narconon Program and was placed in a room with three people. (Id. ¶ 24.)

Plaintiff alleges that the Narconon Program had two required components: (1) course materials consisting of eight L. Ron Hubbard books, and (2) the NLD Program consisting of a sauna and vitamin regimen. (Id. ¶ 25.) Plaintiff alleges that the course materials taught Scientology doctrines and concepts. (Id. ¶ 27.) Plaintiff alleges that the NLD Program is identical to a Scientology ritual known as "Purification Rundown" or the "Purif." (Id. ¶ 29.)

Plaintiff alleges that Fresh Start's rationale for the NLD Program is that: (1) drug residue remains in fatty tissue long after drug use has stopped; (2) drug residue is occasionally released from fatty tissue causing drug cravings and possible relapse; and (3) the sauna flushes drug residue out of fatty tissue. (Id. ¶ 30.) Plaintiff alleges that the NLD Program contains the following steps repeated daily for five weeks: (1) vigorous exercise; (2) ingestion of increasing doses of Niacin and a "vitamin bomb"; and (3) six hours of sauna at temperatures of 160 to 180 degrees Fahrenheit. (Id. ¶ 31–32.)

Plaintiff alleges that the Niacin doses were well beyond the recommended daily allowance. (Id. ¶ 31.) Plaintiff alleges that no medical personnel oversaw him during the sauna and that the Warner Springs facility was staffed with recent Narconon Program patients. (Id. ¶ 33, 39.) Plaintiff alleges that the claimed benefits of the NLD Program are false and do not withstand scientific scrutiny. (Id. ¶ 34.) Plaintiff alleges that there is no support for the 76% claimed success rate and that NI was aware that there is no support for that claimed success rate. (Id. ¶ 38.) Plaintiff alleges that no Fresh Start staff spoke to Plaintiff about substance abuse and instead Plaintiff only received instruction in Scientology. (Id. ¶ 42–43.) Plaintiff alleges that Fresh Start did not send the required papers to Fresh Start's insurance company, causing Plaintiff to be unable to receive reimbursement from his insurance company. (Id. ¶ 44.)

Plaintiff alleges that Fresh Start and the Church of Scientology consider the Narconon Program to be an initial step towards a key spiritual journey taken by Scientologists. (Id. ¶ 41.) Plaintiff alleges that Fresh Start documents state that patients who complete the Narconon Program are to be sent to the nearest Scientology church

"if the individual so desires," indicating that the Narconon Program is used to recruit patients to the Church of Scientology. (Id. ¶ 40.) Plaintiff alleges that, on January 22, 2014, he left the Narconon Program for several reasons, including that he did not feel safe and that he felt that the Fresh Start staff were not fit to treat him. (Id. ¶ 46.)

Plaintiff alleges that Fresh Start, NI, and ABLE are California corporations. (FAC ¶¶ 2, 3, 7.) Plaintiff alleges that ABLE "governs and controls nearly every aspect of" Fresh Start and NI's business activities. (Id. ¶ 50.) Plaintiff alleges that the "separate corporate existences of [Fresh Start], NI, and Able" constitute "a design or scheme to perpetrate fraud" for the purposes of enrolling people in treatment facilities at the cost of "substantial funds" and to promote Scientology. (Id. ¶ 52.)

Plaintiff alleges nine causes of action against Fresh Start, NI, and ABLE: (1) breach of contract; (2) fraud; (3) negligence; (4) intentional infliction of emotional distress ("IIED"); (5) negligent misrepresentation; (6) injunctive relief; (7) violation of the Racketeering Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1964(c); (8) breach of the implied covenant of good faith and fair dealing; and (9) negligence per se. (FAC.)

### IV. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule12(b)(6) where the complaint lacks a cognizable legal theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir. 1984); see Neitzke v. Williams, 490 U.S. 319, 326 (1989) ("Rule12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson, 749 F.2d at 534.

While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Twombly</u>, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Id.</u> In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss v. U.S. Secret Service</u>, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. <u>Thompson v. Davis</u>, 295 F.3d 890, 895 (9th Cir. 2002); <u>Cahill v. Liberty Mut. Ins. Co.</u>, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. <u>Ileto v. Glock, Inc.</u>, 349 F.3d 1191, 1200 (9th Cir. 2003); <u>W. Mining Council v. Watt</u>, 643 F.2d 618, 624 (9th Cir. 1981).

Generally, on a motion to dismiss, courts limit review to the contents of the complaint and may only consider extrinsic evidence that is properly presented to the court as part of the complaint. <u>See</u> <u>Lee v. City of L.A.</u>, 250 F.3d 668, 688-89 (9th Cir. 2001) (court may consider documents physically attached to the complaint or documents necessarily relied on by the complaint if their authenticity is not contested). However, a court may take notice of undisputed "matters of public record" subject to judicial notice without converting a motion to dismiss into a motion for summary judgment. <u>Id.</u> (citing Fᴇᴅ. R. Eᴠɪᴅ. 201; <u>MGIC Indem. Corp. v. Weisman</u>, 803 F.2d 500, 504 (9th Cir. 1986)). Under Federal Rule of Evidence 201, a district court may take notice of facts not subject to reasonable dispute that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be

1  questioned. FED. R. EVID. 201(b); see also Lee, 250 F.3d at 689.

2  **V. DISCUSSION**

3  **A. Judicial Notice**

4  NI and ABLE ask the Court to take judicial notice of two documents: (1) a

5  federal district court order, and (2) a license to operate a drug rehabilitation facility

6  issued by the California Department of Alcohol and Drug Programs. (ECF No. 14, at

7  1–2.) Plaintiff asks the Court to take judicial notice of one document: a federal district

8  court order. (ECF No. 22, at 2.)

9  NI and ABLE and Plaintiff's three requests for judicial notice are properly

10 noticeable. Orders in federal court cases and state licenses are matters of public record

11 and are capable of accurate and ready determination. Finding the two orders and license

12 relevant, the Court takes judicial notice of all three documents.

13 **B. Fresh Start**

14 **1. Breach of Contract**

15 Under California law, there are four elements to a breach of contract: "(1) the

16 existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3)

17 defendant's breach, and (4) the resulting damages to the plaintiff." Oasis West Realty,

18 LLC v. Goldman, 250 P.3d 1115, 1121 (Cal. 2011) (citation omitted). Fresh Start

19 argues that Plaintiff has failed to allege breach because Plaintiff allegedly received

20 "course materials, and a sauna and vitamin regimen" and Plaintiff has failed to allege

21 his own performance because Plaintiff allegedly left the Narconon Program prior to its

22 completion. (ECF No. 24, at 3.)

23 The alleged contract between Fresh Start and Plaintiff contains a section titled

24 "THE NARCONON PROGRAM DEFINED" states that Fresh Start "delivers a

25 comprehensive residential drug and alcohol treatment program." (FAC, Ex. A.) The

26 alleged contract in a section titled "PROGRAM FEES" states that Fresh Start "charges

27 a flat rate of $35,000 for its program." (Id.) Plaintiff further alleges that Carmichael

28 told him the fee was $31,000 and it needed to be paid "in full upfront." (FAC ¶ 21.)

Nowhere in the alleged contract does it state that Plaintiff is required to stay for the entire duration and even includes a provision titled "VOLUNTARY CESSATION OF PROGRAM." (FAC, Ex. A.) Plaintiff alleges that he exchanged "consideration" and that he "suffer[ed] damages in excess of $75,000." (FAC ¶¶ 55, 57.) Plaintiff argues that he "paid $31,000.00," (see ECF No. 20, at 4), however nowhere in Plaintiff's complaint does he allege that he paid that sum to Fresh Start.

While Plaintiff has alleged the existence of a contract and Fresh Start's breach through the failure to provide drug treatment, he has failed to allege his own performance or excuse for his own performance and has failed to allege damages flowing from the breach. Plaintiff does not allege that he performed what he was required to by the alleged contract with Fresh Start, or was excused from performing, and does not allege how Fresh Start's breach damaged him. Accordingly, Plaintiff's first cause of action for breach of contract is DISMISSED with leave to amend as to Fresh Start.

**2. Fraud**

Under California law, there are five elements to fraud, which serves as the basis for the tort of deceit: (1) misrepresentation, (2) knowledge of falsity, (3) intent to induce reliance, (4) justifiable reliance, and (5) damages. Small v. Fritz Companies, Inc., 65 P.3d 1255, 1258 (Cal. 2003). Misrepresentation can be either "false representation, concealment, or nondisclosure." Id. Federal Rule of Civil Procedure 9(b) requires that a plaintiff's allegations "be specific enough to give defendants notice of the particular conduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) (citations and international quotation marks omitted); FED. R. CIV. P. 9(b). To plead fraud against a corporate defendant, California law further requires that plaintiffs "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written." Tarmann v. State Farm Mut. Auto. Ins. Co., 2 Cal.

Rptr. 2d 861, 862–63 (1991) (citations omitted).

Plaintiff alleges six misrepresentations made by Fresh Start through its employee Carmichael and its website: (1) the Narconon Program's 76% success rate; (2) that the Narconon Program is secular and does not involve religion; (3) that Plaintiff would receive drug treatment counseling; (4) that the NLD Program is safe and scientifically proven effective; (5) that Plaintiff would be supervised by medical professionals at all times during detox; and (6) that Fresh Start would assist Plaintiff in obtaining a 50% insurance reimbursement. (FAC ¶¶ 59–60.) Plaintiff alleges that had he relied on these statements in contracting for the Narconon Program and subsequently suffered "mental anguish, including intense paranoia, and pecuniary damages." (FAC ¶¶ 61–62.)

Fresh Start argues that Plaintiff has not alleged that certain of these statements were false or that Fresh Start made these statements with knowledge of their falsity. (ECF No. 24, at 3–4.) However, Plaintiff has alleged that at least some of these statements were made by Fresh Start with knowledge of their falsity, including that the Narconon program does not involve religion, and has met the heightened pleading standards of Rule 9(b) and California law. Plaintiff has specified the allegedly fraudulent statements made by Fresh Start employee Carmichael and Fresh Start's website on approximately December 19, 2013. Accordingly, Fresh Start's motion to dismiss Plaintiff's second cause of action for fraud is DENIED.

**3. Negligence**

Under California law, there are four elements to negligence: (1) duty, (2) breach, (3) causation, and (4) damages. Conroy v. Regents of Univ. of Cal, 203 P.3d 1127, 1132 (Cal. 2009) (citation omitted). First, Plaintiff alleges that Defendants owed Plaintiff two duties: (1) "to render substance abuse treatment to [Plaintiff] that did not subject [Plaintiff] to an unreasonable risk of harm"; and (2) "to render reasonably safe and effective treatment." (FAC ¶ 64.) Second, Plaintiff alleges that Defendants breached these duties in four ways: (1) instructing Plaintiff to spend six hours per day for five weeks in a sauna while ingesting "extreme dosages of Niacin and other

vitamins"; (2) failing to staff the Warner Springs facility with qualified medical professionals; (3) failing to provide qualified counselors to administer treatment; and (4) instructing Plaintiff in Scientology rather than substance abuse treatment. (Id. ¶ 65.) Third, Plaintiff alleges that these breaches caused Plaintiff "mental anguish, including intense paranoia, and pecuniary injuries." (Id. ¶ 66.)

Defendants argue that Plaintiff has not pled causation between the alleged breaches of duties and the alleged damages. (ECF No. 12-1, at 5–6; ECF No. 13, at 7–8.) Fresh Start further argues that Plaintiff has not alleged any damages from the treatment he did reciever. (ECF No. 12-1, at 5.) However, Plaintiff has pled causation and damages. Plaintiff's complaint alleges that Fresh Start owed a duty to him as a drug treatment patient, that Fresh Start breached this duty, and that Fresh Start's breaches caused Plaintiff mental anguish in the form of paranoia. Accordingly, Fresh Start's motion to dismiss Plaintiff's third cause of action for negligence is DENIED.

**4. Intentional Infliction of Emotional Distress**

Under California law, there are three elements to a prima facie case of intentional infliction of emotional distress: "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." Davidson v. City of Westminster, 649 P.2d 894, 901 (Cal. 1982) (quotation and citations omitted). Extreme and outrageous conduct is conduct that exceeds all bounds of decency and may be found where "a defendant (1) abuses a relation or position which gives him power to damage the plaintiff's interest; (2) knows the plaintiff is susceptible to injuries through mental distress; or (3) acts intentionally or unreasonably with the recognition that the acts are likely to result in illness through mental distress." Bogard v. Employers Casualty Co., 210 Cal. Rptr. 578, 587 (Cal. Ct. App. 1985) (citations and internal quotation marks omitted).

Plaintiff alleges two instances of extreme and outrageous conduct: (1) "providing

Scientology in lieu [of] drug treatment or substance abuse counseling"; and (2) "preying on Plaintiff's vulnerabilities and attempting to recruit Plaintiff into Scientology under the guise of drug treatment." (FAC ¶ 68.) Fresh Start argues that the alleged conduct was not "directed specifically at plaintiff." (ECF No. 12-1, at 6.) Fresh Start further argues that the alleged conduct was not "extreme and outrageous." (Id.) However, just because Fresh Start allegedly offers its services to the public does not mean that the services it allegedly provided to Plaintiff were not "directed specifically" at him. Moreover, California has recognized that attempted religious conversion where the defendant initially represented that an event would be secular may serve as the basis for an intentional infliction of emotional distress claim. See Molko v. Holy Spirit Assn., 762 P.2d 46, 59–53, 61–63 (Cal. 1988) superseded by statute as stated in Aguilar v. Atl. Richfield Co., 24 P.3d 493 (Cal. 2001). Plaintiff alleges that he was a drug addict who had contracted with Fresh Start to serve as his drug treatment provider and that instead Fresh Start attempted to convert Plaintiff to Scientology. Thus, Plaintiff has alleged facts that, if true, could constitute the abuse of a position which gave Fresh Start power to damage Plaintiff's interests.

However, Plaintiff alleges that he "suffered severe and extreme emotional distress way beyond what any person in a civilized society should be expected to endure." (FAC ¶ 68.) First, the Court notes that under California law, it is the conduct, not the emotional distress, that must be "beyond what any person in a civilized society should be expected to endure." Second, Plaintiff does not allege how instruction in Scientology rather than drug treatment caused his emotional distress nor does Plaintiff allege what severe or extreme emotional distress he suffered beyond the use of that general phrase. Accordingly, Plaintiff's fourth cause of action for intentional infliction of emotional distress is DISMISSED with leave to amend as to Fresh Start.

**5. Negligent Misrepresentation**

Under California law, there are five elements to negligent misrepresentation: "(1) a misrepresentation of past or existing material fact, (2) without reasonable grounds for

believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) ignorance of the truth and justifiable reliance thereon by the party to whom the misrepresentation was directed, and (5) damages." Fox v. Pollack, 226 Cal. Rptr. 532, 537 (Cal. Ct. App. 1986) (citation omitted). Further, the defendant must owe "a duty to the plaintiff to exercise reasonable care in giving the information." Garcia v. Superior Court, 789 P.2d 960, 963 (Cal. 1990) (citation omitted).

California law also requires that negligent misrepresentation be plead with specificity. Cadlo v. Owens-Illinois, Inc., 23 Cal. Rptr. 3d 1, 5 (Cal. Ct. App. 2004). While the Ninth Circuit has not issued a precedential opinion on whether a negligent misrepresentation cause of action must meet the heightened pleading requirements of Rule 9(b), it has assumed as much in several unpublished opinions. See, e.g., Kelley v. Rambus, Inc., 384 Fed. Appx. 570, 573 (9th Cir. 2010); Atl. Richfield Co. v. Ramirez, 176 F.3d 481 (9th Cir. 1999); Eder v. Allstate Ins. Co., 60 F.3d 833 (9th Cir. 1995). There is a split among district courts in the Ninth Circuit as to whether a negligent misrepresentation cause of action must satisfy Rule 9(b). Compare Petersen v. Allstate Indem. Co., 281 F.R.D. 413, 416 (C.D. Cal. 2012) (holding that Rule 9(b) does not apply to a negligent misrepresentation cause of action) with Glen Holly Entm't v. Tektronix, Inc., 100 F. Supp. 2d 1086, 1093, 1097–98 (C.D. Cal. 1999) (dismissing a negligent misrepresentation cause of action for failure to meet the requirements of Rule 9(b)). This Court need not decide whether a negligent misrepresentation cause of action must satisfy Rule 9(b) because Plaintiff's complaint has met those heightened requirements.

Plaintiff alleges six misrepresentations made by Fresh Start through its employee Carmichael and its website: (1) the Narconon Program's 76% success rate; (2) that the Narconon Program is secular and does not involve religion; (3) that Plaintiff would receive drug treatment counseling; (4) that the NLD Program is safe and scientifically proven effective; (5) that Plaintiff would be supervised by medical professionals at all times during detox; and (6) that Fresh Start would assist Plaintiff in obtaining a 50%

insurance reimbursement. (FAC ¶¶ 70–71.)

Fresh Start argues that Plaintiff has not alleged misrepresentations by someone with authority to speak or injury caused by such misrepresentations. (ECF No. 12-1, at 7–8.) However, Plaintiff has alleged that at least some of these statements were made by Fresh Start through its employee and its website, including that the Narconon program does not involve religion, and has met the heightened pleading standards of Rule 9(b) and California law. Plaintiff has specified the allegedly fraudulent statements made by Fresh Start employee Carmichael and Fresh Start's website on approximately December 19, 2013. Accordingly, Fresh Start's motion to dismiss Plaintiff's fifth cause of action for negligent misrepresentation is DENIED.

**6. Injunctive Relief for Unfair Competition**

California's unfair competition law (the "UCL"), CAL. BUS. & PROF. CODE § 17200 et seq., provides a cause of action to "any 'person who has suffered injury in fact and has lost money or property' as a result of unfair competition." Clayworth v. Pfizer, Inc., 233 P.3d 1066, 1086 (Cal. 2010) (citations omitted). To pursue injunctive relief under the § 17203 of the UCL, a plaintiff must meet the requirements of California Code of Civil Procedure § 382 and California Business and Professions Code § 17204. In re Tobacco II Cases, 207 P.3d 20, 25 (Cal. 2009) (citations omitted).

Fresh Start argues that Plaintiff: (1) has failed to first establish a claim under California Business and Professions Code § 17200; (2) may not enjoin future conduct for the benefit of others; and (3) Plaintiff cannot plead a claim under California Business and Professions Code § 17200. (ECF No. 12-1, at 8–9.) Plaintiff's complaint pleads for injunctive relief pursuant to § 17203 of the UCL. (FAC ¶¶ 76–82.) Plaintiff alleges that he "has been injured by relying on Defendants' false advertisements." (FAC ¶ 80.)

Plaintiff's complaint fails to allege what the alleged injury is, whether monetary or otherwise, and merely alleges that he was "injured." Further, Plaintiff has not plead allegations that would meet the requirements under § 17203. Accordingly, Plaintiff's

1    sixth cause of action for injunctive relief is DISMISSED with leave to amend as to

2    Fresh Start.

3    **7. Civil RICO**

4        Under federal law, there are four elements to a RICO violation: (1) conduct, (2)

5    of an enterprise, (3) through a pattern, (4) of racketeering activity. <u>Howard v. Am.

6    Online Inc.</u>, 208 F.3d 741, 746 (9th Cir. 2000) (citation omitted); 18 U.S.C. § 1962. 18

7    U.S.C. § 1964(c) provides a cause of action to "[a]ny person injured in his business or

8    property" by a RICO violation. 18 U.S.C. § 1964(c). In the Ninth Circuit, damages for

9    personal injury, including pecuniary losses, are excluded from the definition of

10   "business or property" under 18 U.S.C. § 1964(c). <u>Berg v. First State Ins. Co.</u>, 915 F.2d

11   460, 464 (9th Cir. 1990). Plaintiff bases his civil RICO cause of action on allegations

12   of "pecuniary damages and other injuries." (FAC ¶ 91.) Plaintiff also states that he

13   abandons his civil RICO cause of action. (ECF No. 20, at 13 n.1.) Accordingly,

14   Plaintiff's seventh cause of action for civil RICO is DISMISSED without leave to

15   amend.

16   **8. Breach of the Implied Covenant of Good Faith and Fair Dealing**

17       Under California law, every contract contains "an implied convenant of good

18   faith and fair dealing . . . that neither party will do anything which will injure the right

19   of the other to receive the benefits of the agreement." <u>Foley v. Interactive Data Corp.</u>,

20   765 P.2d 373, 390 (Cal. 1988) (citation omitted). There are five elements to a breach

21   of the implied covenant of good faith and fair dealing: "(1) the parties entered into a

22   contract; (2) the plaintiff fulfilled his obligations under the contract; (3) any conditions

23   precedent to the defendant's performance occurred; (4) the defendant unfairly

24   interfered with the plaintiff's rights to receive the benefits of the contract; and (5) the

25   plaintiff was harmed by the defendant's conduct." <u>Rosenfeld v. JPMorgan Chase Bank,

26   N.A.</u>, 732 F. Supp. 2d 952, 968 (N.D. Cal. 2010) (citation omitted). A plaintiff need not

27   plead or even prove a breach of a specific contractual provision. <u>Carma Developers

28   (Cal.), Inc. v. Marathon Dev. Cal., Inc.</u>, 826 P.2d 710, 727 (Cal. 1992).

Plaintiff alleges that Defendants breached the implied covenant of good faith and fair dealing through three actions: (1) having Plaintiff study Scientology rather than receive drug treatment; (2) "attempting to have [Plaintiff] surrender his legal rights in exchange for services for which he had already provided consideration"; and (3) persuading Plaintiff to enter the Narconon Program and then asking Plaintiff "to sign an acknowledgment that the sauna program is not a medical program and that it provides no physical gains." (FAC ¶ 94.) Fresh Start argues that Plaintiff must plead the specific contractual provision which was frustrated. (ECF No. 12-1, at 12–13.)

While Plaintiff has alleged a contract and an interference with Plaintiff's right to receive benefits under the contract, namely drug treatment, Plaintiff has failed to allege fulfillment of his obligations under the contract as he has not alleged that he fulfilled his obligations to Fresh Start under the contract. Accordingly, Plaintiff's eighth cause of action for breach of the implied covenant of good faith and fair dealing is DISMISSED with leave to amend as to Fresh Start.

### 9. Negligence Per Se

Under California law, negligence per se is the "presumption of negligence [that] arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute. Hoff v. Vacaville Unified Sch. Dist., 968 P.2d 522, 530 (Cal. 1998) (citations omitted). However, negligence per se is an evidentiary doctrine and not an independent cause of action. People of Cal. v. Kinder Morgan Energy Partners, L.P., 569 F. Supp. 2d 1073, 1087 (S.D. Cal. 2008) (citations omitted). Plaintiff states that he abandons his negligence per se cause of action. (ECF No. 20, at 13 n.1.) Accordingly, Plaintiff's ninth cause of action for negligence per se is DISMISSED without leave to amend.

### C. NI and ABLE

Plaintiff alleges that NI and ABLE are liable under all nine causes of action based on the alter ego doctrine. (FAC ¶¶ 48–53.) As Plaintiff has abandoned his

seventh cause of action for civil RICO and ninth cause of action for negligence per se, these causes of action are DISMISSED without leave to amend as to NI and ABLE.

Under California law, there are two requirements to invoke the alter ego doctrine: (1) "unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist," and (2) "an inequitable result if the acts in question are treated as those of the corporation alone." <u>Sonora Diamond Corp. v. Superior Court</u>, 99 Cal. Rptr. 2d 824, 836 (Cal. Ct. App. 2000) (citations omitted). In assessing unity of interest and ownership, California courts consider the totality of the circumstances, including factors such as: (1) "commingling of funds and other assets of the two entities," (2) "the holding out by one entity that it is liable for the debts of the other," (3) "identical equitable ownership in the two entities," (4) "use of the same offices and employees," (5) "use of one as a mere shell or conduit for the affairs of the other," (6) "inadequate capitalization," (7) "disregard of corporate formalities," (8) "lack of segregation of corporate records," and (9) "identical directors and officers." <u>Id.</u>

Plaintiff alleges that "Fresh Start and NI have all appearances of being a corporate sham," that "ABLE heavily influences [] Fresh Start and NI," and . (FAC ¶¶ 49–52.) Plaintiff's complaint merely restates some of the factors that California courts consider and does not allege any facts showing that he is entitled to recover from NI and ABLE. Moreover, Plaintiff's opposition to NI and ABLE's motion to dismiss relies heavily on agency as the basis for NI and ABLE's liability. (See ECF No. 21 at 8–21.) Plaintiff's complaint does not allege any facts supporting an agency relationship between any of the Defendants and merely contains conclusory allegations stating that NI and Fresh Start are ABLE's agents and Fresh Start is NI's agent. (<u>See</u> FAC ¶ 5, 9.) Accordingly, Plaintiff's seven remaining causes of action are DISMISSED with leave to amend as to NI and ABLE.

## VI. CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1.   Fresh Start's Motion to Dismiss, (ECF No. 12), is **GRANTED IN PART AND DENIED IN PART**;

2.   NI and ABLE's Motion to Dismiss, (ECF No. 13), is **GRANTED**;

3.   Plaintiff's first cause of action for breach of contract, fourth cause of action for intentional infliction of emotional distress, sixth cause of action for injunctive relief, and eighth causes of action are **DISMISSED WITH LEAVE TO AMEND** as to Fresh Start, NI, and ABLE;

4.   Plaintiff's second cause of action for fraud, third cause of action for negligence, and fifth cause of action for negligent misrepresentation are **DISMISSED WITH LEAVE TO AMEND** as to NI and ABLE;

5.   Plaintiff's seventh cause of action for civil RICO and ninth cause of action for negligence per se are **DISMISSED WITHOUT LEAVE TO AMEND**;

6.   If Plaintiff wishes to cure the deficiencies noted herein, he may file an amended complaint on or before **November 7, 2014**.

DATED:  October 23, 2014

HON. GONZALO P. CURIEL
United States District Judge