1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**

9

**SOUTHERN DISTRICT OF CALIFORNIA**

10

ANGELO AMATO,

CASE NO. 3:14-cv-0588-GPC-BLM

11

Plaintiff,

**ORDER:**

12

v.

**(1) DENYING DEFENDANTS'
NARCONON INTERNATIONAL
AND ASSOCIATION FOR BETTER
LIVING AND EDUCATION
INTERNATIONAL MOTION TO
DISMISS;**

13
14
15

NARCONON FRESH START d/b/a
Sunshine Summit Lodge et al.,

16

Defendants.

**[ECF No. 30]**

17

**(2) VACATING HEARING DATE**

18

## I. INTRODUCTION

19
20

Before the Court is defendants Narconon International ("NI") and Association

for Better Living and Education International's ("ABLE") Motion to Dismiss. (ECF

21

No. 30). Plaintiff Angelo Amato ("Plaintiff") opposes. (ECF Nos. 34.)

22

The parties have fully briefed the motion. (ECF Nos. 30, 34, 38.) The Court finds

23

the motion suitable for disposition without oral argument pursuant to Civil Local Rule

24

7.1(d)(1). Upon review of the moving papers, admissible evidence, and applicable law,

25

the Court **DENIES** NI and ABLE's motion to dismiss.

26

## II. PROCEDURAL HISTORY

27
28

On March 13, 2014, Plaintiff filed a complaint alleging three causes of action

against Narconon Fresh Start d/b/a Sunshine Summit Lodge ("Fresh Start") . (ECF No.

1.) On August 11, 2014, this case was assigned to the Honorable Gonzalo P. Curiel. (ECF No. 16.) On November 7, 2014, Plaintiff filed a Fifth Amended Complaint (the "FAC") alleging five causes of action against Fresh Start, NI, and ABLE. (ECF No. 29.)

On November 21, 2014, NI and ABLE filed a motion to dismiss Plaintiff's complaint. (ECF No. 30.) On December 19, 2014, Plaintiff filed an opposition to NI and ABLE's motion. (ECF Nos. 34.) On January 9, 2015, NI and ABLE filed a response to Plaintiff's opposition. (ECF No. 38.)

### III. FACTUAL BACKGROUND

Plaintiff alleges that he is a mixed martial arts fighter who became addicted to Vicodin prior to December 19, 2013. (FAC ¶ 15.) On approximately December 19, 2013, Plaintiff alleges that he spoke to Fresh Start employee Dan Carmichael ("Carmichael"). (*Id.* ¶ 13–14.) Plaintiff alleges that Carmichael told Plaintiff that Fresh Start's Narconon "Treatment" Program (the "Narconon Program") is effective because its "New Life Detoxification Program" (the "NLD Program") makes patients sweat out "residual drug toxins" that cause drug cravings. (*Id.* ¶ 15.) Plaintiff alleges that Carmichael told Plaintiff that: (1) the NLD Program had been scientifically and medically proven effective; (2) if Plaintiff underwent the Narconon Program, he would be under the care of a nurse or doctor at all times; (3) if Plaintiff underwent the Narconon Program, Fresh Start would provide Plaintiff with "extensive" drug and addiction counseling; (4) Fresh Start staff are properly trained to care for and treat addicts; and (5) Plaintiff's insurance would reimburse 50% of the cost of the Narconon Program. (*Id.* ¶ 16–17.) Plaintiff alleges that Carmichael directed Plaintiff to Fresh Start's website for its Warner Springs, California facility, (http://www.sunshinesummitlodge.com), which represented that the Narconon Program had a 76% success rate. (*Id.* ¶ 18.)

Plaintiff alleges that, based on these representations, he signed a contract to enter the Narconon Program at the Warner Springs facility. (*Id.* ¶ 19.) Plaintiff alleges that

the contract stated that the "Narconon Program" was founded by William Benitez, after Benitez was inspired by the philosophy contained in L. Ron Hubbard's book "*The Fundamentals of Thought*," and that the "Narconon Program" is "secular (NON-RELIGIOUS) . . . and . . . does not include participation in any religious studies of any kind." (*Id.* ¶ 19.) Plaintiff alleges that the full title of L. Ron Hubbard's book is "*Scientology: The Fundamentals of Thought*." (*Id.* ¶ 20.)

Plaintiff alleges that Carmichael stated that the Narconon Program's fee was $31,000.00 and that it needed to be paid in full prior to starting the program. (*Id.* ¶ 21.) Plaintiff alleges that Carmichael told Plaintiff that Plaintiff needed to enter the program quickly because "if [Plaintiff] did not get help immediately, [Plaintiff] would end up dead" and there were only two spots left in the program. (*Id.* ¶ 22.) Plaintiff alleges that he was told over the phone that he would have his own room during the Narconon Program. (*Id.* ¶ 24.)

Plaintiff alleges that there were "numerous empty beds" when he started the Narconon Program. (*Id.* ¶ 22.) Plaintiff alleges that he started detox after entering the Warner Springs facility and was only supervised by a 19-year-old who did not have medical training and slept during the majority of Plaintiff's detox. (*Id.* ¶ 23.) Plaintiff alleges that after he finished detox, he began the Narconon Program and was placed in a room with three people. (*Id.* ¶ 24.)

Plaintiff alleges that the Narconon Program had two required components: (1) course materials consisting of eight L. Ron Hubbard books, and (2) the NLD Program consisting of a sauna and vitamin regimen. (*Id.* ¶ 25.) Plaintiff alleges that the course materials taught Scientology doctrines and concepts. (*Id.* ¶ 27.) Plaintiff alleges that the NLD Program is identical to a Scientology ritual known as "Purification Rundown" or the "Purif." (*Id.* ¶ 29.)

Plaintiff alleges that Fresh Start's rationale for the NLD Program is that: (1) drug residue remains in fatty tissue long after drug use has stopped; (2) drug residue is occasionally released from fatty tissue causing drug cravings and possible relapse; and

1   (3) the sauna flushes drug residue out of fatty tissue. (*Id.* ¶ 30.) Plaintiff alleges that the

2   NLD Program contains the following steps repeated daily for five weeks: (1) vigorous

3   exercise; (2) ingestion of increasing doses of Niacin and a "vitamin bomb"; and (3) six

4   hours of sauna at temperatures of 160 to 180 degrees Fahrenheit. (*Id.* ¶ 31–32.)

5        Plaintiff alleges that the Niacin doses were well beyond the recommended daily

6   allowance. (*Id.* ¶ 31.) Plaintiff alleges that no medical personnel oversaw him during

7   the sauna and that the Warner Springs facility was staffed with recent Narconon

8   Program patients. (*Id.* ¶¶ 33, 39.) Plaintiff alleges that the claimed benefits of the NLD

9   Program are false and do not withstand scientific scrutiny. (*Id.* ¶ 34.) Plaintiff alleges

10   that there is no support for the 76% claimed success rate and that NI was aware that

11   there is no support for that claimed success rate. (*Id.* ¶ 38.) Plaintiff alleges that no

12   Fresh Start staff spoke to Plaintiff about substance abuse and instead Plaintiff only

13   received instruction in Scientology. (*Id.* ¶ 42–43.) Plaintiff alleges that Fresh Start did

14   not send the required papers to Fresh Start's insurance company, causing Plaintiff to

15   be unable to receive reimbursement from his insurance company. (*Id.* ¶ 44.)

16        Plaintiff alleges that Fresh Start and the Church of Scientology consider the

17   Narconon Program to be an initial step towards a key spiritual journey taken by

18   Scientologists. (*Id.* ¶ 41.) Plaintiff alleges that Fresh Start documents state that patients

19   who complete the Narconon Program are to be sent to the nearest Scientology church

20   "if the individual so desires," indicating that the Narconon Program is used to recruit

21   patients to the Church of Scientology. (*Id.* ¶ 40.) Plaintiff alleges that, on January 22,

22   2014, he left the Narconon Program for several reasons, including that he did not feel

23   safe and that he felt that the Fresh Start staff were not fit to treat him. (*Id.* ¶ 46.)

24        Plaintiff alleges that Fresh Start, NI, and ABLE are California corporations. (*Id.*

25   ¶¶ 2, 3, 7.) Plaintiff alleges that Fresh Start is a "corporate sham" and "mere

26   instrumentality" of NI and ABLE for the purposes of promoting Scientology. (*Id.* ¶¶

27   49, 68.) Plaintiff alleges that NI and ABLE "govern and control nearly every aspect of"

28   Fresh Start's business activities. (*Id.* ¶ 50.) Plaintiff alleges that NI publishes

"operations manuals," entitled "Running An Effective Narconon Center" and "Opening A Successful Narconon Center," and requires Fresh Start to comply with these manuals. (*Id.* ¶ 51.) Plaintiff alleges that these manuals show that NI and ABLE "have ultimate authority over [] Fresh Start employees." (*Id.* ¶ 52.) Plaintiff alleges that permanent Fresh Start employees cannot be terminated without the approval of NI's Senior Director of Administration, NI and ABLE have "ultimate authority over" hiring Fresh Start employees, Fresh Start employees can petition NI's Senior Director of Administration to remain employees if they do not meet employee qualification requirements, and Fresh Start employees can file "chits" with NI if they encounter job-related issues. (*Id.* ¶¶ 52–53.) Plaintiff alleges that NI receives ten percent of Fresh Start's weekly gross income and requires Fresh Start to send NI "detailed weekly reports." (*Id.* ¶¶ 56–57.) Plaintiff alleges that Fresh Start must receive approval from NI and ABLE before it releases promotional materials or internet websites. (*Id.* ¶ 58.) Plaintiff alleges that NI and ABLE are involved in Fresh Start's bank account, photos related to L. Ron Hubbard, legal issues, and training materials. (*Id.* ¶ 59–65.) Plaintiff alleges that NI and ABLE are "intimately involved in the day-to-day operations of [] Fresh Start" and have "final authority over all decisions at [] Fresh Start relating to hiring and firing, delivery of services, finances, advertising, training, and general operations." (*Id.* ¶ 66.) Plaintiff alleges that NI and ABLE are principals of Fresh Start. (*Id.* ¶ 67.)

Plaintiff alleges five causes of action against Fresh Start, NI, and ABLE: (1) breach of contract; (2) fraud; (3) negligence; (4) negligent misrepresentation; and (5) breach of the implied covenant of good faith and fair dealing. (FAC ¶¶ 69–100.)

## IV. LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.

1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534.

While a plaintiff need not give "detailed factual allegations," a plaintiff must plead sufficient facts that, if true, "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547). A claim is facially plausible when the factual allegations permit "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, "the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir. 2002); *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Legal conclusions, however, need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003); *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## V. DISCUSSION

NI and ABLE argue that Plaintiff has failed to allege that they are subject to vicarious liability for Fresh Start's actions. (ECF No. 30-1, at 2.) Specifically, NI and ABLE argue that: (1) Plaintiff has pled insufficient facts to invoke alter ego liability;

and (2) Plaintiff has pled insufficient facts to show an agency relationship. (*Id.* at 6–12.) Plaintiff counters that his allegations show that NI and ABLE exert sufficient control over Fresh Start to subject them to liability as principals. (ECF No. 34, at 5–8.) As an initial matter, unlike previous complaints, the FAC does not appear to allege alter ego liability. (*See* FAC.) Thus the Court turns to whether the FAC sufficiently alleges an agency relationship.

The leading case in California on whether a contract between two companies creates an agency relationship is *Patterson v. Domino's Pizza, LLC*. *See* 333 P.3d 723 (Cal. 2014). Though *Patterson* dealt primarily with franchise relationships, *see* CAL. CORP. CODE § 31005, the parties do not dispute its applicability to this case. (*See* ECF No. 30-1, at 10–11; ECF No. 34, at 9.) Under California law, an agency relationship exists is where the alleged principal has the right to control the "means and manner" of the alleged agent. *Cislaw v. Southland Corp.*, Cal. Rptr. 2d 386, 388 (Cal. Ct. App. 1992). The *Patterson* court identified several factors that may bear on whether an agency relationship exists, including a right to control: (1) hiring, (2) direction, (3) supervision, (4) discipline, (5) discharge, and (6) "relevant day-to-day aspects of the workplace behavior of the franchisee's employees." 333 P.3d at 739.

NI and ABLE argue that Plaintiff's allegations are mere legal conclusions. (ECF No. 30-1, at 12.) The Court disagrees. The FAC specifically alleges which areas of Fresh Start's business that NI and ABLE have final say over, including "hiring and firing, delivery of services, finances, advertising, and general operations." (FAC ¶ 66.) The FAC additionally alleges NI's right to control Fresh Start's "means and manner," including: (1) Fresh Start requires NI's approval to discharge a permanent employee; (2) Fresh Start employees can petition NI to keep their job when they would otherwise lose them; (3) NI, with Fresh Start, can take disciplinary action against Fresh Start employees; and (4) Fresh Start must obtain approval from NI before it can publish promotional materials or websites. (*Id.* ¶¶ 52, 53, 55, 58.) Accordingly, the Court finds that Plaintiff's factual allegations plausibly state that NI and ABLE are subject to

vicarious liability for Fresh Start's actions.

NI and ABLE next argue that Plaintiff's five causes of actions are insufficient because the only factual allegations relate to Fresh Start. (ECF No. 30-1, at 13–21.) The Court has already concluded, however, that the FAC does sufficiently allege that NI and ABLE are subject to vicarious liability for Fresh Start's actions. *See Patterson*, 333 P.3d at 734–35. Though NI and ABLE argue that certain of Plaintiff's causes of action contain "no allegations of agency," (ECF No. 30-1, at 19), all five of Plaintiff's causes of action incorporate the rest of the FAC by reference and thus do include agency allegations. (*See* FAC ¶¶ 69, 79 84, 88, 94.) As NI and ABLE do not dispute that the FAC sufficiently alleges all five cause of action against Fresh Start, (*see, e.g.*, ECF No. 30-1, at 16 "the only purported specific misconduct is alleged against Fresh Start"), the Court finds that Plaintiff has sufficiently pled all five cause of action against NI and ABLE. Accordingly, the Court DENIES NI and ABLE's motion to dismiss.

## VI. CONCLUSION AND ORDER

Based on the foregoing, **IT IS HEREBY ORDERED** that:

1.     NI and ABLE's Motion to Dismiss, (ECF No. 30), is **DENIED**; and

2.     The hearing set for January 23, 2015, is **VACATED**.

DATED:  January 21, 2015

HON. GONZALO P. CURIEL
United States District Judge